182 F.3d 1036 (9th Cir. 1999)
 UNIVERSE SALES COMPANY, LTD., PLAINTIFF-COUNTERDEFENDANT-APPELLEE,
v.
SILVER CASTLE, LTD., DEFENDANT-APPELLANT, OFFSHORE SPORTSWEAR, INC., DEFENDANT-COUNTERCLAIMANT-APPELLANT, OFFSHORE OF CALIFORNIA, APPELLANT.
 No. 97-56415
 U.S. Court of Appeals, Ninth Circuit
 Argued and Submitted March 4, 1999
Filed June 25, 1999
 
 C. Dennis Loomis, Troop Meisinger Steuber & Pasich, Los Angeles, California, for the defendants-appellants-counterclaimant.
 Clifford W. Roberts, Jr., Roberts & Associates, Tustin, California, for the plaintiff-counter-defendant-appellee.
 Appeal from the United States District Court for the Central District of California Gary L. Taylor, District Judge, Presiding D.C. No. CV-95-00932-GLTBefore: Warren J. Ferguson, Melvin Brunetti, and Thomas G. Nelson, Circuit Judges.
 
 BRUNETTI, Circuit Judge
 
 1
 Offshore Sportswear, Inc. et al. ("Sportswear")[1] appeals the district court's order granting summary judgment to plaintiff Universe Sales Co. ("Universe") and denying Sportswear's cross-motion for summary judgment, in Universe's diversity action claiming that Sportswear was unjustly enriched. We have jurisdiction pursuant to 28 U.S.C. S 1291. We review the district court's grant of summary judgment de novo, see Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998), and we reverse.
 
 I.
 
 2
 Universe filed this lawsuit on September 21, 1995 in California state court, seeking restitution for royalties it had paid to OCI -- a company that allegedly did not own the two trademarks at issue (the "Marks"). The case was removed to the United States District Court for the Central District of California on October 23, 1995. On November 3, 1995, Sportswear filed an answer together with counterclaims seeking unpaid royalties and $19,008 allegedly due on goods Universe bought from OCI in 1994.
 
 
 3
 On January 13, 1997, Universe filed a motion for summary judgment. Sportswear filed a cross-motion for summary judgment the next day. After many briefs were filed and the district court Judge held two hearings, the court granted Universe's motion for summary judgment and denied Sportswear's motion. The district court held that the evidence that had been submitted by Sportswear was insufficient to prove that all Japanese Patent Office formalities had been completed, and therefore, the court concluded as a matter of law that Universe had no obligation to pay royalties to Sportswear for the use of the Marks. The district court, on May 19, 1997, entered a judgment in favor of Universe that ordered Sportswear to pay restitution of royalties in the sum of $60,285.09 plus interest.
 
 
 4
 On May 30, 1997, Sportswear filed a Motion for Reconsideration which argued that the court had failed to consider certain evidence submitted by Sportswear and that the court had failed to consider Sportswear's non-royalty damage claim of $19,000. After a hearing, the court granted in part and denied in part the motion for reconsideration. The court did not mod ify its original ruling that Universe had no duty to pay royalties. The court did, however, vacate the portion of its original ruling granting restitution. The court concluded that Sportswear's counterclaim for the price of goods sold would "be a wash" as against Universe's claim for restitution. The court therefore granted Universe's summary judgment motion but awarded no damages to Universe. Sportswear appealed.
 
 II.
 
 5
 The district court analyzed the royalty issue that is in dispute under Japanese trademark law, and found that Universe is not obligated to pay royalties to Sportswear. Sportswear argues, inter alia, that the district court erred because it failed to consider properly the Declaration of Mitsuhiro Kamiya, a Japanese attorney who specializes in Japanese trademark and contract law. Specifically, Sportswear contends that the Kamiya declaration establishes that Japanese contract law controls in this scenario and that under that body of law the License Agreement executed by Universe, Yasuo Takase and Daystar of California, is a valid and enforceable agreement such that Sportswear is now entitled to
 
 
 6
 receive past royalties due from Universe. According to Sportswear, because the Kamiya declaration has not been not been rebutted by Universe the district court erred in concluding that under Japanese law Universe is not obligated to make royalty payments. We agree with Sportswear's arguments regarding the district court's failure properly to take the Kamiya declaration into account.
 
 
 7
 The Kamiya declaration states that Japanese contract law, not Japanese trademark law, is controlling in this situation. Under Japanese contract law, explains the declaration, the License Agreement is both valid and enforceable, and as such requires that Universe make royalty payments to Sportswear. According to the declaration, under Japanese contract law a "licensee will be unable to cancel the license agreement or refuse to pay royalties strictly on the grounds that the licensor was not the registered owner of the licensed trademark when the license agreement was executed. In other words, only if the licensor cannot acquire proper title from the registered owner of the licensed trademark.... will the license agreement be terminable." Here, the declaration states, Sportswear can and has obtained proper title of the two trademarks at issue, and therefore is entitled to collect royalty payments from Universe.
 
 
 8
 The Kamiya declaration is admissible pursuant to Federal Rule of Civil Procedure Rule 44.1, which provides, in relevant part: "The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. Rule 44.1 allows courts to consider a wide array of materials in order to ascertain foreign law. See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil S 2444 (2d ed. 1995) (courts may "consider any relevant material or source, including testimony, without regard to whether the material considered would be admissible under the Federal Rules of Evidence"). In addition, courts may do their own research in order to ascertain foreign law. Id. Although, pursuant to Rule 44.1, courts may ascertain foreign law through numerous means, expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the basic mode of proving foreign law. Id.
 
 
 9
 In this case, the expert testimony of Kamiya, in the form of a declaration with attached exhibits, was submitted by Sportswear. As discussed above, the declaration reasons that Japanese contract law applies, and under that body of law, Universe is obligated to pay royalties to Sportswear. Although Universe had numerous opportunities to present evidence that would rebut this portion of Kamiya's declaration regarding Japanese law, Universe introduced nothing. Also, the district court performed no independent research of Japanese law. The district court should have considered the fact that the Kamiya declaration states that Japanese contract law is controlling. The district court then could have instructed the parties to present further evidence regarding the interpretation of Japanese law on that point; or, the district court may have performed its own research. Because the Kamiya declaration stands as an urebutted presentation and interpretation of Japanese law, the district court erred in granting summary judgment to Universe.
 
 
 10
 The Dissent contends that our opinion conflicts with the case of Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp., 161 F.3d 314, 319 (5th Cir. 1998), adopting In re. Arbitration between: Trans Chem. Ltd. & China Nat'l Mach. Import & Export Corp., 978 F. Supp. 266, 275 (S.D. Tex. 1997). To the contrary, that case is easily distinguished. In Trans Chem., the district court analyzed numerous materials in its effort to ascertain Chinese law on the relevant issue. Specifically, the district court analyzed the testimony of three separate experts who opined on Chinese law; the court also performed its own research on Chinese law by analyzing the Chinese Constitution and numerous other relevant Chinese laws. See Trans Chem., 978 F. Supp. At 278-290. After analyzing the expert testimony and performing its own research, the district court reached a Conclusion as to the meaning of Chinese law. Here, in contrast, there is no indication in the record that the district court performed anything close to such careful and extensive analysis, as the Dissent would have us believe. The district court did not, before making its determination regarding the relevance and meaning of Japanese law, analyze Kamiya's argument regarding Japanese contract law,[2] encourage Universe to submit anything to counter Kamiya's argument, or perform any independent research on the issue. This case is simply different than Trans Chem.
 
 
 11
 The Dissent states that it is both amazing and unprecedented that we have determined that the district court did not do an adequate job in its effort to ascertain the relevant law, and have accepted the testimony of an expert to establish that law. We must point out, however, that it is not novel for an appellate court in this context to determine that a district court performed an inadequate inquiry. See, e.g., Twohy v. First National Bank of Chicago, 758 F.2d 1185, 1193 (7th Cir. 1985) (although district court considered a series of affidavits of foreign law experts concerning issues of Spanish law relevant to the case, appellate court determined that district court should have demanded a more complete presentation by counsel on Spanish law or conducted independent research). Also, it is neither novel nor remarkable for a court to accept the uncontradicted testimony of an expert to establish the relevant foreign law. See, e.g., Golden Trade v. Lee Apparel Co., 143 F.R.D. 514, 524 (S.D. New York 1992) (court declined to question uncontradicted expert testimony as to both the state of Norwegian law and the facts relevant to the application of that law).
 
 
 12
 We therefore REVERSE the district court's grant of summary judgment to Universe, GRANT Sportswear's crossmotion for summary judgment, and REMAND to the district court to reconsider consistent with this memorandum any remaining damages issues.
 
 
 13
 REVERSED and REMANDED.
 
 
 
 NOTES:
 
 
 [1]
 The parties and the district court refer to the Appellants as Offshore of California, Inc. ("OCI"). OCI was acquired by Offshore Sportswear, Inc., et. al. ("Sportswear") -- the true Appellants here. We therefore refer to the Appellants as "Sportswear". For the purposes of this opinion, however, Sportswear may be construed as synonymous with OCI.
 
 
 [2]
 We can find no indication in the record, at least, that the district court considered that portion of the declaration. The district court, it appears, decided early on that Japanese trademark law applied, and then never strayed from that reasoning.
 
 
 FERGUSON, Circuit Judge, Dissenting:
 
 14
 I Dissent from the majority's determination to reverse the district court's grant of summary judgment in favor of Universe Sales Co. (Universe) and grant summary judgment in favor of Offshore Sportswear, Inc. (Sportswear). I do so because the record is clear that the district court thoroughly investigated the foreign law issue here and then appropriately determined that summary judgment was warranted in favor of Universe. In fact, the district court did everything the majority opinion now claims the court should have done.
 
 
 15
 "Foreign law, though formerly treated as an issue of fact, is now recognized as an issue of law, to be established by any relevant source, including testimony." United States v. Peterson, 812 F.2d 486, 490 (9th Cir. 1987) (citing Fed. R. Civ. P. 44.1). As the Fifth Circuit has noted, "[t]he necessity of sifting through foreign law does not mitigate against the use of summary proceedings." Banco de Credito Indus., S.A. v. Tesoreria General, 990 F.2d 827, 838 (5th Cir. 1993). Thus, the majority is correct that the Kamiya declaration is admissible and a proper consideration on summary judgment. However, reversing the grant of summary judgment in favor of Universe Sales and granting summary judgment for Offshore Sportswear is wrong.
 
 
 16
 The district court appropriately conducted the Japanese law inquiry. Contrary to the majority's assertions, the district court conducted a thorough inquiry into the Japanese law issue: After determining that the issue of Japanese law was not clear from the parties' initial pleadings, the court requested further evidence and briefing regarding the requirements of Japanese law. The parties submitted such further evidence, and the district court made its determination from a consideration of that evidence. That course of proceeding is entirely appropriate under the Federal Rules. See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil S 2444, at 652 (2d ed. 1995) (stating that if the evidence is inconclusive, "the court should request a further showing by counsel, engage in its own research, or direct that a hearing be held, with or without oral testimony, to resolve the issue"). Just because the district court did not blindly adopt one legal expert's analysis does not mean that the district court failed in its responsibilities. In fact, I am at a loss to imagine what more the majority expected the district court to do other than specifically spell out every detail of its reasoning process -- e.g., "I considered sentence one of declaration A, and I reject it. I considered sentence two, and I accept that."
 
 
 17
 Furthermore, on appeal, our duty is to determine whether the district court was correct in its legal ruling. See Peterson, 812 F.2d at 490 ("As an appellate court, we are able to determine the relevant legal standards."); Kalmich v. Bruno, 553 F.2d 549, 552 (7th Cir. 1977) (stating that "the resolution of [the foreign law issue is one] which we are free to arrive at on the basis of our own independent research and analysis"). We cannot escape that duty by stating that the district court should have merely accepted the testimony of an attorney because the court failed to ask for even more testimony on the issue. In fact, I am amazed that the majority now holds that district court Judges cannot determine what the applicable foreign law is but must be bound by what an attorney declares what the law is, as long as that attorney's declaration has not been specifically rebutted. Besides flouting the tautological principle that Judges (not attorneys) determine law, the court today unnecessarily creates a conflict with the only other circuit to have considered this issue. See Trans Chem. Ltd. v. China Nat'l Mach. Import & Export Corp., 161 F.3d 314, 319 (5th Cir. 1998), adopting In re Arbitration Between: Trans Chem. Ltd. & China Nat'l Mach. Import & Export Corp., 978 F. Supp. 266, 275 (S.D. Tex. 1997) ("[F]ederal Judges may reject even the uncontradicted Conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities."). Rather than castigating the district court for not doing enough and then for some reason blindly accepting one side's version of the law, this court should weigh the testimony as gathered by the district court and make its own determination on the legal issue.
 
 
 18
 If the majority were to do just that, it would be clear that the district court made the correct determination. The Kamiya declaration was before it, and it chose to rely on part of the declaration but not all of it. Instead, the court based its Conclusion on other evidence in the record regarding Japanese law, evidence that I find conclusive on the issue. The trademarks at issue here are creatures of Japanese law. Under Japanese law, a transfer in ownership of a trademark must be registered with the Japanese patent office. See Article 98 of Japanese Patent Law ("(1) The following shall be of no effect unless they are registered: (i) transfers..., extinguishment by surrender or restrictions on disposal of a patent right."). Likewise, any transfer of a trademark right must also be registered in accordance with Article 98. See Article 35 of Japanese Trademark Law ("Section 98(1)(i) and (2) (effects of registration) of the Patent Law shall apply mutatis mutandis [with the necessary changes in points of details ] to trademark rights."). Thus, the transfer of the right to receive royalties could not have taken place solely in a contract; rather, it must have been registered with the Japanese patent office. Inexplicably ignoring these relevant statutes, the majority accepts the Kamiya declaration and holds that registration of trademarks in Japan is now virtually irrelevant in the Ninth Circuit.
 
 
 19
 Using the statutorily derived analysis I have set forth here, the relevant question in this case is whether the trademark transfer was properly registered with the patent office. It is undisputed that trademark 239 was not properly registered. Regarding trademark 758, the district court properly concluded that the evidence submitted by Sportswear did not show that the trademark was registered, as the evidence merely showed that Sportswear (at the time, Offshore of California) was listed as an owner of the trademark. Sportswear did not produce any evidence to show that such a listing means that the trademark transfer itself was actually recorded with the patent office.
 
 
 20
 Accordingly, the majority errs in reversing the district court's grant of summary judgment in favor of Universe and granting Sportswear's cross-motion for summary judgment. The majority's fundamental flaw in its analysis is its acceptance of the Kamiya declaration. The district court was entitled to reject the analysis in that declaration because the record shows that Japanese statutory trademark law applies. The district court did all the majority says that it should have done in investigating the issue of Japanese law. The majority opinion's rejection of the district court's efforts and substitution of one lawyer's statement of what the law is adopts a dangerous precedent for future cases involving determinations of foreign law.
 
 
 21
 I therefore respectfully Dissent.