**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| G AND G PRODUCTIONS LLC, a California Limited Liability Corporation, *Plaintiff-Appellant*, v. RITA RUSIC, *Defendant-Appellee.* | No. 16-56107 D.C. No. 2:15-cv-02796-RGK-E OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted February 14, 2018
Pasadena, California

Filed August 29, 2018

Before: M. Margaret McKeown and Kim McLane
Wardlaw, Circuit Judges, and James Donato,* District
Judge.

Opinion by Judge McKeown;
Concurrence by Judge Donato

---

* The Honorable James Donato, United States District Judge for the Northern District of California, sitting by designation.

## SUMMARY[**]

### Statute of Limitations

The panel affirmed in part, and vacated in part, the district court's summary judgment that was entered in favor of Rita Rusic in a diversity action brought by G&G Productions, LLC, alleging various claims concerning ownership of *Wine of Babylon*, a valuable oil painting by the artist Jean-Michel Basquiat.

G&G alleged that Rusic stole the painting from her former husband and G&G's predecessor-in-interest, Vittorio Cecchi Gori, an Academy Award-winning Italian film producer.

The panel applied the substantive law of California, which involved determining the accrual dates of G&G's various claims and assessing their timeliness under California's borrowing statute. The panel further held that there was no dispute that all of G&G's causes of action arose in Italy. Finally, the panel held that if the Italian statute of limitations would bar a claim, then the borrowing statute, Cal. Civ. Proc. Code § 361, barred that claim in California.

Concerning the conversion claim, as a threshold matter, the panel concluded that the district court was permitted to determine accrual under Italian law, assuming the borrowing statute authorized the court to do so. The panel further held that under *de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Cir. 2016), and Fed. R. Civ. P. 44.1, a party relying on foreign law had an obligation to raise the specific legal issues and to provide the district court with the information needed to determine the meaning of the foreign law. The panel held that in the district court, the parties did not raise explicitly the issue of whether G&G's claims accrued under Italian law, and G&G failed to raise the issue whether its conversion claim was exempt from an Italian statute of limitations. Given the circumstances, the district court did not err in applying California law to determine when the conversion claim accrued. The panel affirmed the district court's order with respect to G&G's conversion claim because the district court properly determined that the claim accrued sometime in 2000 and was time-barred under both the Italian and California statutes of limitations.

The panel vacated and remanded to the district court with respect to G&G's replevin and unjust enrichment claims because there was no indication that the district court determined when those claims accrued.

The panel vacated and remanded the district court's order with respect to G&G's claim for declaratory relief because the disputed facts on the claim defeated summary judgment in favor of Rusic.

District Judge Donato concurred because the conversion claim was properly dismissed under Italy's 10-year statute of limitations whether the accrual was measured under Italian law or California law. He noted that the approach of in effect splitting the borrowing statute – by applying California law to determine when a claim accrues and foreign law to decide if the time to sue has lapsed – might

not be sound when the laws of California and the foreign jurisdiction do not align so neatly.

---

### COUNSEL

Brent Herbert Blakeley (argued), Blakeley Law Group, Manhattan Beach, California, for Plaintiff-Appellant.

Scott S. Humphreys (argued), Burt M. Rublin, and Peter L. Haviland, Ballard Spahr LLP, Los Angeles, California, for Defendant-Appellee.

---

### OPINION

McKEOWN, Circuit Judge:

What happens when you cross an Academy Award-winning Italian film producer, a Croatian actress-turned-producer, a bitter divorce, an oil painting worth millions of dollars, and dozens of pages of untranslated Italian law in the court of appeals? The answer, we conclude, is a procedural morass and a remand to the district court.

G&G Productions, LLC ("G&G"), a California limited-liability company, appeals the district court's order granting summary judgment in favor of Rita Rusic, a citizen of Italy, in G&G's suit asserting various state-law claims. G&G alleges that sometime in 1999 or 2000, Rusic stole *Wine of Babylon*—a large, valuable oil painting by the late American artist Jean-Michel Basquiat—from Rusic's former husband and G&G's predecessor-in-interest, Vittorio Cecchi Gori. The district court held that G&G's claims were barred by California's borrowing statute, Cal. Civ. Proc. Code § 361,

because the applicable ten-year Italian statute of limitations would bar those claims in an Italian court.

We affirm the district court's order with respect to G&G's conversion claim because the district court properly determined that this claim accrued sometime in 2000 and was time-barred under both the Italian and California statutes of limitations. We vacate and remand the district court's order with respect to G&G's replevin and unjust enrichment claims, however, because there is no indication that the district court determined when those claims accrued. We also vacate and remand the district court's order with respect to G&G's claim for declaratory relief because the disputed facts on this claim defeat summary judgment in favor of Rusic.

## BACKGROUND

Vittorio Cecchi Gori is a well-known film producer and former Italian politician.[1] In 1983, Gori married Rita Rusic, a Croatian-born actress, singer, and film producer who is now a citizen of Italy. At the time they married, Gori and Rusic agreed to keep their assets separate under Italian law.

In June 1998 Gori purchased a large oil painting entitled *Wine of Babylon* (1984) by the late American artist Jean-Michel Basquiat from the Tony Shafrazi Gallery in New York for $330,000. In late 1998 or early 1999, the Shafrazi

---

[1] Gori's best-known films include *Life is Beautiful* (1997), which received the Academy Award for Best Foreign Language Film, and *Il Postino* (1994), which received an Academy Award nomination for Best Picture. Gori was a Senator for the Italian People's Party from 1994 to 2001.

Gallery shipped the painting to Gori and Rusic's residence in Rome, Italy, where it hung with other artworks.

Mere months later, the marriage deteriorated. Rusic filed for divorce from Gori in May 1999, accusing Gori of physical abuse and infidelity. Around the time that Rusic filed for divorce, *Wine of Babylon* vanished from the couple's home. Gori contends that Rusic smuggled the painting out of the residence and stashed it elsewhere. Rusic counters that she did not take—and, because of a head injury allegedly caused by Gori, could not have taken—the painting, which actually disappeared "when Mr. Gori caused movers working for him to remove numerous items of personal property from [the residence] in 1999 or possibly 2000."

In the meantime, Basquiat's works have continued to appreciate in value. In 2017, for example, Basquiat's 1982 oil-stick and spray-paint creation, *Untitled*, set a record for any work by a U.S. artist sold at auction, fetching $110.5M at Sotheby's.

Gori has never wavered in his belief that Rusic took *Wine of Babylon*. On several occasions, he initiated legal action in Italy to recover the painting. On May 16, 2000, Gori's attorney sent Rusic a letter demanding the painting's return. Two months later, Gori's attorney filed a brief in Italian court in connection with the divorce proceedings, petitioning for the painting's return. The Italian court rejected Gori's petition in an August 2006 divorce decree, which found Gori at fault for spousal abuse.[2] Undeterred, Gori's attorneys sent

---

[2] A few months later, in October 2006, Gori's financial holding company, Cecchi Gori Group Fin. Ma. Vi S.p.A. ("FINMAVI"), collapsed in one of the largest bankruptcies in Italian history with over

another letter to Rusic on February 24, 2009 threatening to initiate criminal proceedings if Rusic failed to return the painting. Gori's attorneys sent similar letters to Rusic later in 2009 and in 2010.

When nothing came of the letters, Gori filed a criminal complaint against Rusic in Italian court on March 22, 2010. On February 13, 2014, the court ruled in Rusic's favor and acquitted her of the charges. The court first determined that Rusic and Gori had not legally separated when Gori filed his complaint, thus barring the criminal action under Italian law. The court further determined that because Gori suspected Rusic stole the painting as early as 2000, Rusic's purported crime was "subject to the Statute of Limitations" of seven years and six months, which expired on January 10, 2008— over two years before Gori initiated the criminal action.

On February 22, 2010—one month before Gori filed his criminal complaint in Italy—Gori assigned any rights that he held in *Wine of Babylon* to his long-standing Italian attorney, Giovanni Nappi, to settle a €2M debt for unpaid legal fees. Nappi then assigned his rights to the painting to G&G, in exchange for a 50% ownership interest in the newly formed limited-liability company. The remaining interest in G&G is held by an Italian businessman and longtime friend of Gori. G&G took title to the painting "subject to any running statute of limitations."

According to G&G, *Wine of Babylon* was most recently observed in the Milan apartment of Canio Mazzaro, an Italian businessman who is Rusic's former boyfriend. G&G cites the testimony of Paola Ruffolo, who purportedly saw

---

$927M in debt. Gori was later found guilty of criminal bankruptcy and sentenced to seven years in prison in 2013.

the painting during a party at Mazzarro's apartment in 2011. Ruffolo supposedly conveyed that fact to Nappi sometime in 2014. Ruffolo testified that Mazzaro claimed he had obtained the painting from Rusic in 2011 as part of the settlement of Mazzaro's lawsuit against Rusic for breaching a profit-sharing agreement.

Rusic, however, submitted a declaration by Mazzaro flatly denying Ruffolo's allegations, each of which Mazzaro dismissed as "a lie." According to Mazzaro, he has never met Ruffolo, has never lived in the apartment where Ruffolo claimed to have seen the painting, has never had possession of the painting, and has never claimed that he obtained the painting from Rusic or from any other party.

## PROCEDURAL HISTORY

### I. DISTRICT COURT

In 2015, G&G filed suit against Rusic in the United States District Court for the Central District of California, asserting state-law tort claims of conversion, replevin, unjust enrichment, and declaratory relief.

On cross-motions for summary judgment, the district court ruled in Rusic's favor. The court first determined that California's borrowing statute governed G&G's claims, all of which "arose" from Rusic's alleged theft of the painting in Italy. *See* Cal. Civ. Proc. Code § 361 (providing that "[w]hen a cause of action has arisen" in a jurisdiction other than California and is time-barred under the law of that jurisdiction, the claim is also time-barred in California).

As a result, the district court proceeded to analyze whether G&G's claims were time-barred under Italian law. On this question, Rusic offered the declaration of Carlo

Arnulfo, an experienced attorney who is licensed to practice law in Italy. Arnulfo explained that Article 2946 of the Italian Civil Code prescribes a generic, ten-year statute of limitations for any cause of action that is not subject to a shorter limitations period under a different statute. Arnulfo stated that no other statute prescribes a shorter limitations period for conversion or replevin claims, concluding that G&G's tort claims are subject to a ten-year limitations period in Italy. Notably, Arnulfo supported his declaration with exactly the sort of materials that a court would need to decide an issue of foreign law, including relevant Italian statutes and case law in translation (in this case, by a bilingual attorney who is admitted to both the Italian and California bars).

G&G's submission was a different story. G&G conceded that Article 2946 governed its claims in Italy, and claimed only that Gori's various attempts to recover the painting from Rusic tolled the limitations period under Italian law. The district court rejected this argument for three reasons. First, G&G's tolling argument was "entirely unsupported" by any citations to Italian law. Second, G&G's only support was a declaration of Giovanni Nappi, who concededly is not an expert in Italian law and owns 50% of G&G. Third, even if the court had accepted Nappi's claim that Gori's actions tolled the statute, Nappi failed to quantify the duration of any tolling or the length of any suspension, "rendering it impossible" for the district court to determine whether G&G's tort claims were timely filed. Unsurprisingly, the court agreed with Rusic that G&G's tort claims expired in Italy ten years after those claims accrued.

According to the district court, G&G's tort claims accrued no later than May or July 2000, when Gori first sent a demand letter to Rusic demonstrating that he "clearly knew

of his claim" and that he "was entitled to sue." The court explicitly made this determination under California law.**[3]** *E.g.*, *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774, 2006 WL 4749756, at \*34 (C.D. Cal. Sept. 25, 2006) ("[T]he applicability of California's borrowing statute turns on the time plaintiffs' claims accrued."); *Dalkilic v. Titan Corp.*, 516 F. Supp. 2d 1177, 1184 (S.D. Cal. 2007) ("To determine where the cause of action accrued, a court must look to the time when, and the place where, the act is unlawfully committed or omitted.") (internal quotation mark and citations omitted); *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06-00774, 2010 WL 3034060, at \*14 (C.D. Cal. July 30, 2010) ("Under California law, a cause of action generally accrues at the moment that the party who owns it is entitled to file and prosecute an action."). If the tort claims accrued in 2000, of course, G&G would have had "to file [those] claim[s] before July 10, 2010 at the latest" in Italian court. Because G&G did not file suit until 2015, the district court held that G&G's tort claims were time-barred under the Italian statute of limitations, and thus barred by California's borrowing statute. The court granted Rusic's motion for summary judgment on these claims.

---

**[3]** As the district court noted, Rusic did provide the court with a general rule of accrual under Italian law. The English translation of Article 2935 of the Italian Civil Code provides that "[t]he statute of limitations runs from the day on which the right can be exercised." The court noted that "[a]ccording to Italian case law, the limitations period will not be tolled for the plaintiffs' ignorance of the event from which the right arises or the delay in acknowledging it due to lack of communication by the other party." The record does not indicate, however, that Rusic's expert explained how that rule applied in this case or that the district court applied that rule to determine accrual under Italian law.

Finally, the district court held that G&G's declaratory judgment claim was moot "because G&G . . . maintained in its pleadings and at the summary judgment stage that Mazzara [sic], not Rusic, now owns the Painting pursuant to the alleged settlement agreement [with Mazzaro] in 2011."

## II. COURT OF APPEALS

On appeal, G&G's strategy changed dramatically—and often. For starters, G&G's opening brief presented an entirely new argument that G&G's tort claims are not subject to *any* statute of limitations under Italian law. According to G&G, Article 2934 of the Italian Civil Code provides that claims for "recovery" of property, as defined by Article 948, are exempt from any statute of limitations. G&G argued that because it sought a declaration as to the legal owner of the painting, an Italian court would not consider this an action for "restitution" under Article 2037, which is subject to the ten-year statute of limitations. Rather, the court would consider it an action for "recovery" of property under Article 2934, which is exempt.

Once again, the only support G&G provided for its argument was a declaration, this time of Michele Nappi. Although Michele Nappi can be considered an expert on Italian law—he is a former "divisional President" of Italy's Court of Cassation and longtime "senior magistrate" with more than forty years of experience—the family resemblance is no coincidence: he is also Giovanni Nappi's father. While Michele Nappi's declaration included some excerpts of Italian law, none of them were translated. More fatally, Nappi's declaration spoke exclusively in terms of whether G&G's "action" is one for "restitution" or "recovery" of property under Italian law. G&G's complaint, however, asserted four *distinct* causes of action. Three of those claims do not seek to recover any "property" at all.

And there was more.  Mere days before oral argument, G&G filed a motion to admit *pro hac vice* an Italian attorney—previously unheard of in the litigation—to "discuss and otherwise answer any questions which [the] Court may have regarding the interpretation of Italian law." Unsurprisingly, we denied the motion.

At no point, we stress, did G&G attempt to explain why it could not have presented these experts, legal theories, and citations to Italian law to the district court.[4]  The reason is simple: G&G could have.  Instead, G&G attempts to use Rule of Civil Procedure 44.1—which treats an issue of foreign law as a question of law, *see* Fed. R. Civ. P. 44.1— as a permission slip for unlimited do-overs. The rule does not extend that far.  We decline to consider G&G's untimely and undeveloped arguments.

## ANALYSIS

Because our jurisdiction rests on the parties' diversity of citizenship, we apply substantive state law, including state law regarding statutes of limitations and tolling.  *See Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Statutes of limitations are intended to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*,

---

[4] Rusic was considerably more diligent and supported her interpretation of Italian law, in both the district court and this court, with expert declarations and Italian legal authorities in translation.

321 U.S. 342, 348–349 (1944). Unless a statute provides otherwise, the "statute of limitations begins to run at the time when a complete cause or right of action accrues." 54 C.J.S. *Limitations of Actions* § 129 (2018). "In common parlance," a right is said to accrue "when it comes into existence." *United States v. Lindsay*, 346 U.S. 568, 569 (1954); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (recognizing the "standard rule" that a claim accrues "when the plaintiff has a complete and present cause of action") (internal quotation marks omitted).

So-called borrowing statutes, whereby the forum state "borrows" the applicable statute of limitations from the jurisdiction in which the cause of action arose, have a further justification. "[A]s a matter of policy, there is no sound reason why an obligee should be entitled to recover in the forum if his action has been fully barred by the law of the state in which it arose." John W. Ester, *Borrowing Statues of Limitation and Conflict of Laws*, 15 U. Fla. L. Rev. 33, 41 (1962). If the cause of action "has been extinguished," that is, such a "defense should accompany [the] defendant to each jurisdiction in which he might subsequently reside." *Id.* at 42. For that reason, borrowing statutes necessarily prevent "the possibility of perpetual liability for an ambulatory defendant." *Id.*

Here we apply the substantive law of California, which involves determining the accrual dates of G&G's various claims and assessing their timeliness under California's borrowing statute:

> When a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be

> maintained against him in this State, except in favor of one who has been a citizen of this State, and who has held the cause of action from the time it accrued.

Cal. Civ. Proc. Code § 361. Without doubt, there is no dispute that all of G&G's causes of action arose in Italy. If the Italian statute of limitations would bar G&G's claim, § 361 bars that claim in California.[5]

The district court did not distinguish among G&G's three tort claims. The district court did determine, however, that G&G's *conversion* claim accrued in 2000 under California law and so was untimely under the Italian (or the California) statute of limitations. We affirm that judgment. But there is no indication that the district court determined, rather than assumed, that G&G's *replevin* and *unjust enrichment* claims also accrued in 2000. We thus vacate the district court's judgment with respect to those claims and remand for further proceedings.

## I. CONVERSION CLAIM

The district court determined under California law that G&G's conversion claim accrued sometime in 2000. The court explained that under § 338 of California's Civil Procedure Code, a "cause of action in the case of theft . . . of an article of historical, interpretive, scientific, or artistic significance is not deemed to have accrued until the discovery of the whereabouts of the article by the aggrieved

---

[5] G&G does not claim to qualify for the exemption as a person "who has been a citizen of [California], and who has held his cause of action from the time it accrued." Cal. Civ. Proc. Code § 361.

party." Cal. Civ. Proc. Code § 338(c)(2). Applying California law, the court explained that:

> According to G&G, the [conversion] claim against Rusic did not accrue until 2014, when Nappi discovered that the Painting was allegedly housed at Mazzaro's Milan residence. Therefore, G&G maintains the limitations period did not commence until 2014. In making this argument, G&G conveniently overlooks the fact that its predecessor in interest, Gori, was aware of Rusic's alleged theft in May 2000 as evidenced by the demand letter he sent seeking the return of the Painting. While Gori may not have been aware of the Painting's exact whereabouts back in 2000, "the discovery rule, whenever it applies, incorporates the principle of constructive notice." *Orkin v. Taylor,* 487 F.3d 734, 741 (9th Cir. 2007). In other words, the "cause of action began to accrue when [Gori] discovered or reasonably could have discovered [his] claim to the [Painting], and [its] whereabouts." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Based on the demand letter, it is clear that Gori was on notice of his claim for conversion against Rusic as early as May 2000. Accordingly, the discovery rule does not result in a later accrual date.

G&G did not file suit until 2015, years after both the California and Italian limitations periods had expired. On

that basis, the district court granted Rusic's motion for summary judgment on G&G's tort claims.

Although the issue of when G&G's claims accrued for purposes of the Italian statute of limitations may be a question of Italian law, we affirm the district court's conclusion, under California law, that G&G's conversion claim accrued sometime in 2000. After all, both parties relied overwhelmingly on California law to support their arguments as to when G&G's tort claims accrued, and neither suggested that California and Italian law differ with respect to accrual. Under those circumstances, as we explain below, the district court properly applied the law of the forum—California—to determine when G&G's tort claims accrued for purposes of the Italian statute of limitations.

## A.  Accrual under Italian Law

As a threshold matter, we conclude that the district court was *permitted* to determine accrual under Italian law, assuming the borrowing statute authorized the court to do so.[6] Rule of Civil Procedure 44.1, after all, treats issues of foreign law as "question[s] of law" for the court to decide, Fed. R. Civ. P. 44.1, and contemplates that the "process of ascertaining foreign law" will be "equivalent to the process

---

[6] The California Supreme Court does not appear to have decided whether, for purposes of the borrowing statute, accrual is a question of California law or the law of the state or foreign country in which the claim arose. We note, however, that California decisions applying the borrowing statute have determined accrual under California law. *See, e.g.*, *Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370, 376 (2003) (applying California law to determine date of claim accrual for purposes of deciding timeliness under Indiana law). Because the district court properly determined the accrual date of G&G's conversion claim under California law even if accrual was a question of Italian law, we express no opinion on this question.

for determining domestic law, insofar as possible." *de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016). This approach accords with the Supreme Court's decision in *Animal Science Products, Inc. v. Hebei Welcome Pharmaceutical Co.*, 138 S. Ct. 1865, 1873 (2018) (noting that "the 'obvious' purpose of the changes Rule 44.1 ordered was 'to make the process of determining alien law identical with the method of ascertaining domestic law to the extent that it is possible to do so.'") (citation omitted)). As we explained in *de Fontbrune*, Rule 44.1 "unshackles" courts—and to a lesser extent, litigants—"from the evidentiary and procedural requirements that apply to factual determinations." 838 F.3d at 997; *see also id.* (explaining that the purpose of Rule 44.1 was "to lay to rest [an] antiquated conception of foreign law as a question of fact that must be proved at trial and reviewed on appeal only for clear error"). In deciding issues of foreign law, therefore, a court may consider "any relevant material, including testimony, without regard to its admissibility," and even engage "in its own research and consider any relevant material thus found" without giving formal notice to the parties of its intent to do so. Fed. R. Civ. P. 44.1 (advisory committee's note).

In *de Fontbrune*, we thus counseled that "it would be antithetical to the language and purpose of Rule 44.1 to *prohibit* courts from considering relevant materials beyond the pleadings" in ruling on a motion to dismiss "when the claim depends on a determination of foreign law." 838 F.3d at 998 (emphasis added). We explained that "independent judicial research does not implicate the judicial notice and ex parte issues spawned by independent factual research undertaken by a court," *id.* at 999, and observed that some of our prior decisions "have likewise stressed the district court's independent obligation to adequately ascertain

relevant foreign law" under Rule 44.1, "even if the parties' submissions are lacking," *id.* at 997 (citing *Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1039 (9th Cir. 1999)).

But *de Fontbrune* should not be read as imposing an "independent obligation" on the district court to determine whether G&G's claims accrued under Italian law, or were exempt from the Italian statute of limitations, irrespective of whether the parties briefed—or indeed, even raised—those issues. As one commentator has suggested, *de Fontbrune*'s reference to the district court's "independent obligation," *see id.*, may potentially mislead litigants into believing that "the 'burden' of determining [foreign] law is on the judges, not on any party." Steven S. Gensler, 1 Fed. R. of Civ. P. Rules and Commentary, Rule 44.1 (2018 ed.); *see also id.* (cautioning that *de Fontbrune* may have "led some trial courts to misperceive their role").

G&G enthusiastically assumed that very position to justify its presentation of entirely new legal theories, new foreign law (albeit not in translation), and new legal experts—all of which G&G easily could have presented to the district court at the summary judgment stage. In fact, G&G went so far as to claim that in this case "the *District Court* simply got it wrong" for failing to realize that "G&G's claims against Rusic are not barred by the Italian statute of limitations"—a curious assertion, considering that G&G raised that argument for the first time on appeal.

Nevertheless, G&G insisted that "in the final analysis it is *the court, not the litigants*, which must get it right."**[7]**

Not exactly so.  More accurately, when presented with a question of law, the court must make the appropriate legal determination.  For the court to do so, however, the litigants must raise the question in the first instance.  The appropriate reading of *de Fontbrune*, and of Rule 44.1, therefore, is that a party relying on foreign law has an obligation to raise the specific legal issues and to provide the district court with the information needed to determine the meaning of the foreign law.  After all:

> Even in the internet age, it would put an extraordinary burden on the court if parties could nakedly invoke foreign law and then delegate the job of figuring it out to the judge and her clerks.  By making clear that the information burden remains at all times on the party invoking foreign law, the scheme effectively instructs parties that they waive the right to rely on foreign law if they don't supply the information needed to determine it.  The party *may get saved* by the court's own research efforts, but if the task is too great the court may fall back on some other law (usually forum law) as presumptively controlling.

*Id.* (emphasis added).

---

**[7]** Presumably, G&G's reading of *de Fontbrune* also underlies its belief that parties are not required to provide courts with translations of their foreign legal authorities.

Our reading of Rule 44.1, which emphasizes the parties' informational duty to the court, is most consistent with the text and purposes of the Rule itself.  With respect to courts, Rule 44.1 speaks exclusively in terms of permission, not prescription.  *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court *may* consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.") (emphasis added).  The advisory committee's 1966 notes make this unmistakably clear.  *See, e.g.*, *id.* (advisory committee's note) ("The *second sentence* of the new rule describes the materials to which the court *may* resort in determining an issue of foreign law.") (second emphasis added); *id.* ("The new rule *permits* consideration by the court of any relevant material . . . .") (emphasis added); *id.* ("[T]he new rule provides that in determining this law the court is *not limited* by material presented by the parties; it *may* engage in its own research and consider any relevant material thus found.") (emphases added).

Further, Rule 44.1's requirements are intended to be "flexible and informal" so as to "encourage the court and counsel to regard the determination of foreign law as a cooperative venture requiring an open and unstructured dialogue among all concerned."  9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2444 (3d ed. 2008).  There is nothing "cooperative" about simply invoking foreign law and expecting a court to decide every legal permutation, including ones that the parties failed to raise.

This approach to Rule 44.1 hews to our precedent.  First, it reinforces our admonition that we judges are not "like pigs . . . hunting for truffles."  *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 987 (9th Cir. 2011) (quoting

*United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). We have held that "[a]bsent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so." *See, e.g.*, *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000). A party's unexplained failure to raise an argument that was indisputably available below is perhaps the least "exceptional" circumstance warranting our exercise of this discretion. After all, we have emphasized that it "is the duty of counsel to assist the *court*, as well as the client." *United States v. Wright*, 568 F.2d 142, 143 (9th Cir. 1978) (emphasis added); *see also* Model Rules of Prof'l Conduct Preamble (2018) (reinforcing that a lawyer is "an officer of the legal system" with a "special responsibility for the quality of justice"). Since Rule 44.1 makes the meaning of foreign law a "question of law," this duty extends to matters of foreign law as well. Submission of reams of untranslated foreign law and cases can hardly be a basis for criticizing the district court's ruling on a question of foreign law.

Our reading of Rule 44.1 is also consistent with this court's default choice of forum law in cases where a party's reliance on foreign law is merely superficial. *See, e.g.*, *United States v. Westinghouse Elec. Corp.*, 648 F.2d 642, 647 n.1 (9th Cir. 1981) ("Absent a showing to the contrary, it is presumed that foreign law is the same as the law of the forum."). Where the parties present no authority, or insufficient authority, regarding the meaning of foreign law, we permit a court to "conclude that the parties have acquiesced in the application of the law of the forum." *Interpool Ltd. v. Char Yigh Marine (Panama) S.A.*, 890 F.2d 1453, 1458 (9th Cir. 1989). This default presumption permits the court to "best do justice to the parties" by relying on a body of law with which the court is most familiar. *See* Restatement (Second) of Conflict of Laws § 136, cmt. h

(1971); *id.* ("In the absence of adequate information as to the content of the otherwise applicable law, some courts have applied the local law of the forum on the theory that there is no other law before the court.") (citing *Bartsch v. M.G.M., Inc.*, 391 F.2d 150 (2d Cir. 1968) (neither party suggested that applicable law differed from forum law), *cert. denied*, 393 U.S. 826 (1968)).

Finally, this view of Rule 44.1 is most consistent with the cases on which *de Fontbrune* itself relied. In *Universe Sales*, for example, we reversed the district court's determination of foreign law because the court ignored the only submission of expert testimony in that case on the meaning of foreign law. We noted that it is "neither novel nor remarkable for a court to accept the uncontradicted testimony of an expert to establish the relevant foreign law." 182 F.3d at 1039; *see also de Fontbrune*, 838 F.3d at 997 (citing *Universe Sales*, 182 F.3d at 1039). In this case, that is precisely what the district court did. After determining that G&G's "conclusion as to the tolling effect of Italian court proceedings and demand letters [was] entirely unsupported," the district court adopted Rusic's interpretation of Italian law, which was well-supported by both English translations of Italian authorities and expert declarations.

In *Twohy v. First National Bank of Chicago*, 758 F.2d 1185 (1985), the Seventh Circuit noted that "[n]othing in Rule 44.1 strictly *requires* a district judge to engage in private research," but the court noted that "[u]nder [the] circumstances, . . . it would have been appropriate for the [district] court to demand a more complete presentation by counsel on the issue." *Id.* at 1193 (emphasis added) (citation and internal quotation marks omitted); *see also de Fontbrune*, 838 F.3d at 997 (citing *Twohy*, 758 F.2d at

1193). Given Rusic's uncontradicted and well-supported submissions and arguments on the meaning of Italian law in the district court, we cannot conclude that "it would have been appropriate" for the court to demand more, or to engage in further research on issues G&G failed to develop.

In short, in the district court, the parties did not raise explicitly the issue of whether G&G's claims accrued under Italian law, and G&G failed to raise the issue of whether its conversion claim is exempt from an Italian statute of limitations. Under the circumstances, the district court did not err in applying California law to determine when G&G's conversion claim accrued and that the claim is subject to a ten-year statute of limitations in Italy.

## B. Accrual under California Law

In California, three elements comprise a cause of action for conversion. First, the plaintiff owned, possessed, or had the right to possess an item of personal property. Second, the defendant intentionally took wrongful possession of, disposed of, and/or prevented the plaintiff from having access to the property for a significant period of time. Third, the plaintiff was harmed by the defendant's actions. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (citing *Oakdale Vill. Group v. Fong*, 43 Cal. App. 4th 539, 543–44 (1996)).

All three of these elements were plainly present as early as 2000, when Gori first sent Rusic letters demanding the painting's return. At that point, Gori was aware of his claimed ownership of the painting, of Rusic's alleged taking of the painting, and of any harm Gori suffered. Nothing more was needed to enable Gori to file the same claim for conversion that G&G now asserts against Rusic.

Section 338(c)(2) of the California Civil Procedure Code provides that the "cause of action in the case of theft, as described in Section 484 of the Penal Code, of an article of historical, interpretive, scientific, or artistic significance is not deemed to have accrued until the discovery of the whereabouts of the article by the aggrieved party." Cal. Civ. Proc. Code § 338(c)(2).**[8]** We are not persuaded that § 338(c)(2) governs G&G's conversion claim, because the statute is one of several provisions concerned with "actions for the *specific recovery* of personal property." *Id.* § 338(c)(1) (emphasis added); *id.* § 338(c)(3)(A) (action for "specific recovery" of a work of fine art from a "museum, gallery, auctioneer, or dealer"); *see California Mfrs. Ass'n v. Pub. Utils. Comm'n*, 24 Cal. 3d 836, 844 (1979) ("Words must be construed in context, and statutes must be harmonized both internally and with each other, to the extent

---

**[8]** Section 484 of the Penal Code provides:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

Cal. Penal Code § 484.

possible."). G&G's conversion claim, of course, is a cause of action for damages.

But even if § 338(c)(2) does govern here, it does not aid G&G. Section 338(c)(2)'s "discovery rule, whenever it applies, incorporates the principle of constructive notice." *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007); *cf.* Cal. Civ. Proc. Code § 338(c)(3)(A)(i) (action against a museum, auctioneer, gallery, or dealer accrues upon "*actual* discovery" of "[t]he identity and whereabouts of the work of fine art") (emphasis added). Gori has always maintained that the painting disappeared from the residence that he shared with Rusic and their children after the couple separated, and Gori moved out, in 2000. Indeed, Gori's position has always been that Rusic was the only person who could have taken the painting. Thus, Gori had constructive knowledge that the painting was in Rusic's possession as early as 2000. Knowledge of the exact whereabouts of the painting was unnecessary for Gori to file a conversion claim.[9]

The cases on which G&G relies, requiring knowledge of the specific "whereabouts" of the work of art, are distinguishable. In each of those cases, the plaintiff was suing a *subsequent purchaser or donee* of the work, not the *original thief,* and the defendant was unknown to the plaintiff until the plaintiff discovered the "whereabouts" of the stolen work or works. Only then did the plaintiff have a "complete and present cause of action," *Wallace*, 549 U.S. at 388. *See, e.g.*, *Von Saher*, 592 F.3d at 969 (action against

---

[9] Rusic's repeated denials that she stole the painting have no bearing on the accrual of G&G's conversion claim. To hold otherwise would effectively require the defendant in an action for conversion to admit liability as a condition of accrual—a result that finds no support in either common sense or the case law.

a museum for recovery of a painting originally misappropriated by Nazi officials); *Orkin*, 487 F.3d at 741–42 (action against a private purchaser for recovery of a painting originally misappropriated by Nazi officials); *Soc. of Cal. Pioneers v. Baker*, 43 Cal. App. 4th 774, 777–80 (1996) (action against a private purchaser for recovery of a cane handle originally stolen by an employee of an antiques dealer); *Charash v. Oberlin College*, 14 F.3d 291, 293–94 (6th Cir. 1994) (action against a private donee for recovery of drawings originally misappropriated by an art dealer).

Because Gori had constructive knowledge that the painting was in Rusic's possession as early as 2000, his cause of action accrued at that time for purposes of the Italian and California statutes of limitations. Accordingly, Gori's claim expired at the latest in 2003 under California law and at the latest in 2010 under Italian law. Because G&G did not file the conversion claim until 2015, that claim is time-barred. We affirm summary judgment in favor of Rusic on G&G's conversion claim.

## II. REPLEVIN AND UNJUST ENRICHMENT CLAIMS

In contrast to G&G's conversion claim, the district court did not explicitly determine—under either Italian law or California law—whether or when G&G's claims for replevin and unjust enrichment accrued. Neither the parties nor the district court indicated whether the same California "discovery rule" (including principles of "constructive notice") governing G&G's conversion claim in California would apply, or apply in the same way, to G&G's claims for replevin and unjust enrichment.

For example, G&G's replevin claim seeks the specific return of the painting. But the parties cannot even agree if Rusic was ever in possession of the painting or who currently

has it. *See Law v. Heiniger*, 282 P.2d 607, 608–09 (Cal. Ct. App. 1955) (noting that "an action to recover possession of personal property will not lie unless at the time the action is commenced defendant has the possession of the property or the power to deliver it in satisfaction of a judgment for its possession," but "[a]n exception to the rule" is made "in those cases (detinue) where possession had been in the defendant but was wrongfully given to another"); *see also O'Keefe v. Snyder*, 416 A.2d 862, 870 (N.J. 1980) (holding that artist's replevin action for paintings stolen thirty years prior did not accrue until she discovered, or through the exercise of reasonable diligence could have discovered, "the identity of the possessor of the paintings").

Indeed, the question of when a claim accrues can often be a fact-intensive inquiry. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 691 (9th Cir. 2005). Here, the potentially relevant facts are hotly disputed. G&G and Rusic disagree, for example, about the original legal owner of the painting, the current whereabouts of the painting, and whether the painting was conveyed to a third party. With no briefing or discussion by the district court on the appropriate test—or tests—governing the accrual of each of G&G's claims under either Italian or California law, we cannot determine with any confidence whether the resolution of disputed facts is necessary to decide when the Italian statute of limitations began to run on the remaining claims. We therefore vacate the judgment of the district court with respect to G&G's replevin and unjust enrichment claims and remand for answers to these questions.

## III.  DECLARATORY RELIEF

Finally, we vacate and remand the judgment of the district court with respect to G&G's claim for declaratory relief. The district court held that "G&G's request for a

declaration of the Painting's ownership against Rusic is moot because G&G has maintained in its pleadings and at the summary judgment stage that Mazzara [sic], not Rusic, now owns the Painting pursuant to the alleged settlement agreement in 2011." In doing so, the district court ignored that the parties disagree as to the original owner of the painting, meaning that even if Mazzaro acquired the painting from Rusic as part of a settlement agreement, Rusic may have lacked the authority to convey the painting to him in the first place. Additionally, Mazzaro flatly denied Ruffolo's allegations that he currently has the painting, which he dismissed as "a lie." According to Mazzaro, he has never met Ruffolo, has never lived in the apartment where Ruffolo claimed to have seen the painting, has never had possession of the painting, and has never claimed that he obtained the painting from Rusic or any other party.

For this reason alone, it was improper to grant summary judgment on G&G's claim for declaratory relief. *See Tolan v. Colton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) ("[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."). Therefore, we need not address Rusic's argument that G&G's claim for declaratory relief is constitutionally unripe for adjudication. Rusic is free to make that argument on remand.

## CONCLUSION

Frequently associated with the Neo-Expressionist school, Jean-Michel Basquiat's works have been described by historians as "dodging the full impact of clarity like a matador" and [k]eeping us in [a] state of half-knowing, of mystery-within-familiarity" such that "we cannot quite fathom the point they belabor." Marc Mayer, *Basquiat in History*, in Basquiat 50 (M. Mayer ed., 2005). In a fitting

example of life imitating art, clarity has not been a hallmark of this litigation.

On remand, G&G and Rusic must heed our instruction to properly brief the district court on the meaning of any Italian law used to support their legal arguments. This means providing the court with copies of Italian legal authorities and English translations, and as appropriate, scholarly treatises, declarations by qualified experts (if desired by the court or parties),[10] or other relevant materials.

**AFFIRMED in part, VACATED in part, and REMANDED.**

Each party shall bear its own costs on appeal.

---

DONATO, District Judge, concurring:

We have accepted without further opinion the decisions that have, in effect, split the borrowing statute to apply California law to determine when a claim accrues, and foreign law to decide if the time to sue has lapsed. *See*, *e.g.*, *Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370, 376 (2003); *Deirmenjian v. Deutsche Bank*, No. CV 06-00774 MMM (CWx), 2006 WL 4749756, at *32 n.163 (C.D. Cal. Sept. 25, 2006) ("In *Cossman*, the California Court of Appeal looked to Indiana law to determine whether a cause

---

[10] *Compare Bodum USA, Inc. v. La Cafetière, Inc.*, 621 F.3d 624, 628–31 (7th Cir. 2010), *and id.* at 631–38 (Posner, J., concurring) (criticizing reliance on expert testimony in determining foreign law in certain circumstances), *with id.* at 638–40 (Wood, J., concurring) (disagreeing that "expert testimony is categorically inferior to published, English-language materials").

of action was time-barred. It applied California law, however, to determine when the claim accrued.").

There are several reasons why this approach may not be sound. As a matter of statutory construction, it is arguably at odds with the plain text of Section 361, which speaks in terms of a cause of action that "has arisen in another state" and "by the laws thereof" is time-barred. Cal. Civ. Pro. Code § 361. This language indicates that the question of accrual should be determined under the law of the foreign jurisdiction, just as the limitations period is so determined. That is wholly consonant with the purpose of Section 361, which is to prevent "residents of other states with claims that are barred in the jurisdiction in which they arose" from reviving an untimely claim in a California court. *Cossman*, 108 Cal. App. 4th at 376. It makes little sense to decide whether a claim that arose in Arkansas is untimely by using California law to fix the date of accrual. That would not be a determination of whether a claim were stale "by the laws" of Arkansas.

Another concern is that mixing and matching jurisdictions in applying Section 361 is bound to lead to unpalatable results. Let's say a plaintiff sued in California in 2015 on a claim that arose in Italy and accrued, when measured under California law, in 2010. Let's also say the applicable Italian statute of limitations is 5 years. Under the current case law, that claim would not be barred by the borrowing statute. But what if under Italian law the claim accrued in Italy in 2005 and so would have been barred there? In that situation, the plaintiff would get away with exactly what Section 361 is intended to prevent—suing in California on a claim that would have been time-barred in Italy.

Fortunately, that is not what happened here. In my view, the district court made sure to analyze accrual under the laws of both California and Italy, which turned out to be the same and yielded the same accrual period of May or July 2000. Rusic's conversion claim was properly dismissed under Italy's 10-year statute of limitations whether the accrual was measured under Italian law or California's.

But the day will come when the laws of California and the foreign jurisdiction do not align so neatly. In my view, the date of accrual for Section 361 purposes should be determined by the foreign jurisdiction at issue, rather than California law. With these additional observations, I concur.