**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SANA KAPPOUTA, | No. 21-56310 |
| *Plaintiff-Appellant,* | D.C. No. 3:20-cv-01501-TWR-BGS |
| v. | |
| VALIANT INTEGRATED SERVICES, LLC, a Virginia limited liability company; THE ELECTRONIC ON-RAMP, INC., a Maryland corporation; DOES, 1-20, inclusive, | OPINION |
| *Defendants-Appellees.* | |

Appeal from the United States District Court
for the Southern District of California
Todd W. Robinson, District Judge, Presiding

Argued and Submitted December 5, 2022
Pasadena, California

Filed February 21, 2023

Before:  Paul J. Kelly, Jr.,[*] Sandra S. Ikuta, and Morgan
Christen, Circuit Judges.

Opinion by Judge Kelly

## SUMMARY[**]

### Labor Law

The panel affirmed the district court's dismissal of Sana Kappouta's action under the Defense Contractor Whistleblower Protection Act against Valiant Integrated Services, LLC, and The Electronic On-Ramp, Inc.

Kappouta alleged that while at a bar at the U.S. embassy compound in Baghdad, Iraq, she was shoved by an intoxicated co-worker. After she reported the incident, her employer attempted to transfer her to a different position. After initially refusing the transfer, she was fired.

The panel held that to survive a motion to dismiss under the Defense Contractor Whistleblower Protection Act, 10 U.S.C. § 4701(a)(1)(A), a plaintiff must plausibly allege that: (1) she made a disclosure that she reasonably believed was evidence of a violation related to a Department of Defense contract; and (2) her employer discharged,

---

[*] The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

demoted, or otherwise discriminated against her because of that disclosure.

As to the first element, the panel held that Kappouta did not plausibly allege a reasonable belief that her complaint about the shoving incident encompassed one of the acts described in § 4701(a)(1)(A)-(C), which include a violation of law related to a Department of Defense contract. The panel held that, in the context of a defense contract, a violation of law is related to the contract if it is related to the purpose of the contract or affects the services provided by the defense contractor to the Department of Defense. A disclosure is protected if a disinterested observer with knowledge of the operative facts would reasonably conclude that the disclosure evidences a violation of law related to a defense contract in this manner. The panel concluded that, under this standard, Kappouta's complaint failed to allege a sufficient nexus between the shove and the Department of Defense-Valiant contract.

---

## COUNSEL

Derek J. Angell (argued), Roper PA, Orlando, Florida; John L. Holcomb, Jr., Obagi Law Group PC, Los Angeles, California; Zein E. Obagi, Jr., Obagi Law Group PC, Redondo Beach, California; for Plaintiff-Appellant.

Matthew S. Hellman (argued), Jenner & Block LLP, Washington, D.C.; Kirsten Spira and Sati Harutyunyan, Jenner & Block LLP, Los Angeles, California; Gary L. Eastman and Sara Gold, Eastman IP, San Diego, California; for Defendants-Appellees.

## OPINION

KELLY, Circuit Judge:

While at a bar at the U.S. Embassy compound in Baghdad, Iraq, Plaintiff-Appellant Sana Kappouta was shoved by an intoxicated co-worker but was not injured. She was reluctant to report the incident, but she eventually acquiesced to requests of the State Department and her employer. Concededly because of her report, Ms. Kappouta's employer attempted to transfer her to a different position. After initially refusing the transfer, she was fired. Ms. Kappouta filed suit under the Defense Contractor Whistleblower Protection Act (DCWPA), 10 U.S.C. § 4701.[1] The district court dismissed her complaint without prejudice, allowing leave to amend. Ms. Kappouta then waived the right to amend, contending that additional facts were either unnecessary or could not be pled in good faith and requested the district court enter final judgment. This appeal followed. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## I.  Background

We describe the well-pled facts alleged in Ms. Kappouta's complaint, which we assume to be true at the motion to dismiss stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). We also notice the factual findings in the Office of Inspector General report (OIG Report) attached to, and referenced in, Ms. Kappouta's complaint. *See United*

---

[1] Ms. Kappouta filed suit under 10 U.S.C. § 2409, which has since been renumbered as 10 U.S.C. § 4701. The current section of the Code is cited in this opinion.

*States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  But we are not bound to accept as true the legal conclusions included therein.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 681 (2009).

Ms. Kappouta worked as a linguist for Valiant Integrated Services, LLC (Valiant),[2] pursuant to a United States Department of Defense (DoD) contract.  While at Valiant, she worked and resided at a U.S. Embassy compound in Baghdad, Iraq.  On December 7, 2017, after work hours, at the Embassy bar, Ms. Kappouta's co-worker, Sarah Maher, shoved her and nearly knocked her down.

Later that evening, Ms. Kappouta recounted the incident to her supervisor/Valiant employee Parween Babani, who was a friend of Ms. Maher.  Ms. Babani urged Ms. Kappouta not to "make any problems," positing that Ms. Maher was intoxicated.

The next morning, embassy Regional Security Officers (RSOs) from the State Department contacted Ms. Kappouta and pressured her to make a formal complaint about the incident.  Ms. Kappouta initially declined, expressing fear of retaliation and losing her job.  RSOs then reported the incident to Valiant management, including Oscar Ortiz, who again pressured Ms. Kappouta to report, assuring her she would not be retaliated against.  On December 12, 2017, Ms. Kappouta provided a written statement to RSOs including

---

[2] Ms. Kappouta's complaint names both Valiant and The Electronic On-Ramp, Inc. (EOR) as her employers.  But the OIG Report indicates she is a subcontractor of Valiant.  Neither defendant contested Ms. Kappouta's employment status at the district court, nor is such a challenge raised on appeal.  In any event, Ms. Kappouta's technical employment status is relevant only for background and not to the issue before us.

the fact that she had been asked to do so and that it was intended "just for the records and not as a report."  On December 13, 2017, Ms. Kappouta emailed EOR management to inform them of the assault and express her concern about retaliation for the RSO report.

Ms. Babani also submitted her account of the events, confirming that Ms. Kappouta had told her about the shove the night of December 7, but stating that "she did not see Ms. Maher touch Ms. Kappouta or do anything wrong" and "insinuat[ing] that Ms. Kappouta was drunk at the time." Between January 10 and January 12, 2018, Mr. Ortiz and Ms. Babani decided that Ms. Kappouta should be transferred to a position in Basra, Iraq.  According to the complaint, Mr. Ortiz admitted that the decision to transfer Ms. Kappouta was based on her cooperation in the investigation.

On January 28, 2018, Mr. Ortiz, Ms. Babani, and Chief Shanklin met with Ms. Kappouta to tell her for the first time about the transfer, which they informed her was at the behest of Ms. Kappouta's Army unit.  Ms. Babani threatened that if Ms. Kappouta did not accept the transfer, she would lose her job.

Ms. Kappouta next went to Army officials, with whom she worked on the DoD-Valiant contract.  They confirmed that the Army had not requested her transfer and that it was at Valiant's direction.  Ms. Kappouta responded with her belief that it was retaliatory.  On January 29, 2018, Ms. Kappouta met with Mr. Ortiz to accept the transfer, but was told instead she was being terminated.  The stated basis for her discharge: Ms. Kappouta's refusal to accept the transfer and her "jump[ing] the line of command" to complain to Army personnel.

Ms. Kappouta first submitted a complaint to the DoD Office of the Inspector General (OIG), initiating an investigation. The OIG prepared a report (OIG Report), finding Ms. Kappouta's claim meritorious and recommending she be reinstated. Ms. Kappouta then filed suit under the Defense Contractor Whistleblower Protection Act (DCWPA), 10 U.S.C. § 4701, alleging she was terminated in retaliation for making protected disclosures under the Act. Valiant filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court held that Ms. Kappouta had not alleged a protected disclosure, given the lack of (a) a legal violation contemplated by the whistleblower statute and (b) nexus between the shove and the DoD-Valiant contract.

## II. Discussion

We review the grant of a motion to dismiss de novo and may affirm on any basis supported by the record. *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014). Under § 4701(a)(1)(A), "[a]n employee of a contractor . . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body . . . information that the employee reasonably believes is evidence of . . . a violation of law, rule, or regulation related to a Department contract (including the competition for or negotiation of a contract) or grant." 10 U.S.C. § 4701(a)(1)(A). Therefore, to survive a motion to dismiss under the DCWPA, a plaintiff must plausibly allege that: (1) she made a disclosure that the plaintiff "reasonably believe[d]" is evidence of a violation related to a DoD contract; and (2) her employer discharged, demoted, or otherwise discriminated against her because of that disclosure.

No one contests that Ms. Kappouta's complaint has adequately alleged that she suffered an adverse employment action based on her compliance with an internal investigation.  At the pleading stage, Ms. Kappouta has plausibly alleged she was transferred (and ultimately discharged) because of one or more reports she made about the shove.  Therefore, the question remains whether she has plausibly alleged a reasonable belief that her complaint about the shoving incident encompassed one of the acts described in § 4701(a)(1)(A)–(C).

To give rise to whistleblower protection in this context, the disclosure must be one that the plaintiff reasonably believes is related to an act described in § 4701(a)(1)(A)–(C):

- "Gross mismanagement of a Department of Defense contract or grant,

- a gross waste of Department funds,

- an abuse of authority relating to a Department contract or grant,

- [] a violation of law, rule, or regulation related to a Department contract . . . .

- [or] [a] substantial and specific danger to public health or safety."

10 U.S.C. § 4701(a)(1)(A)–(C).

Our task is to interpret the meaning of "a violation of law . . . related to a Department contract," an issue few courts have had occasion to address.  Although the caselaw is limited in this regard, we have interpreted "related to" in other contexts as bearing a significant relation to. *California*

*Trucking Ass'n v. Bonta*, 996 F.3d 644, 656 (9th Cir. 2021) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992)) (interpreting the FAAAA; distinguishing "significant[] relat[ion]" from "tenuous, remote, or peripheral connection"); *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643 (9th Cir. 2014) (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371 (2008)) (same). Likewise, in interpreting the Contract Disputes Act, the Federal Circuit has recognized that the phrase "relating to the contract" necessarily implies "some relationship to the terms or performance of [that] contract." *Todd Const., L.P. v. United States*, 656 F.3d 1306, 1312 (Fed. Cir. 2011) (quoting *Applied Cos. v. United States*, 144 F.3d 1470, 1478 (Fed. Cir. 1998)). In the context of a defense contract, we conclude a violation of law is *related to* the contract if it is related to the purpose of the contract or affects the services provided by the defense contractor to the DoD. And a disclosure is protected if a disinterested observer with knowledge of the operative facts would reasonably conclude that the disclosure evidences a violation of law related to a defense contract in this manner. *See Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 890 (9th Cir. 2004).

Ms. Kappouta theorizes that the shove constituted an assault in violation of 18 U.S.C. § 113(a)(5), which makes simple assault a crime in certain federal jurisdictions. In her view, violation of this statute is tantamount to a "violation of law" contemplated by the Act. 10 U.S.C. § 4701(a)(1)(A). Defendants contend Ms. Babani's conduct does not rise to the level of unlawful behavior contemplated by the DCWPA and, further, bears no relation to the DoD-Valiant contract.

At this stage, we need not decide whether the underlying facts could constitute a simple assault. Nor is it necessary to determine whether a violation of 18 U.S.C. § 113(a)(5) could

ever give rise to whistleblower protection. Rather, we are obligated to affirm dismissal of the complaint because it fails to allege a sufficient nexus between the shove and the DoD-Valiant contract. Stated another way, the allegations in the complaint do not encompass a disclosure sufficiently related to the DoD-Valiant contract to give rise to DCWPA protection. In this way, the statute necessarily limits the scope of claims giving rise to protection under the Act. Thus, we decline to address defendants' broader argument that the conduct and resulting disclosure could never come within the protection of the Act.

Ms. Kappouta argues that the assault was related to the contract and that she plausibly alleged her reasonable belief that it was job-related and also related to the DoD-Valiant contract. Defendants contend Ms. Kappouta argues reasonable belief for the first time on appeal and therefore has forfeited this argument. Indeed, Ms. Kappouta's opposition to the motion to dismiss does not elucidate her belief that her disclosure was related to the contract. Instead, the opposition relies on conclusions to this effect arrived at by the OIG, which we do not accept as fact. In any event, our review is of the well-pleaded facts in the complaint, and, as addressed below, the facts alleged do not plausibly demonstrate an objectively reasonable belief that the disclosure shared a nexus with the contract.

The statutory text makes clear that this standard is a relatively forgiving one. That is, Ms. Kappouta need only plead a "reasonable belief" that her disclosures were protected, and that belief need not be correct. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1001 (9th Cir. 2009) (considering a different whistleblower statute that protects disclosures the plaintiff "reasonably believes" encompass a violation of law). However, the belief must be

objectively reasonable.  *See id.* (interpreting the reasonable belief requirement as including both a subjective and objective component).   And, on the facts alleged, the disclosures concerning the shoving incident were, at best, only tenuously related to the defense contract.

In support of the nexus requirement, the complaint cites to several provisions required by regulation to be included in the DoD-Valiant contract: (1) a clause establishing an ethical code of conduct, requiring "due diligence to 'prevent and detect criminal conduct'" and "commitment to compliance with the law"; (2) a further requirement of disclosure to an agency OIG "whenever a principal, employee, agent, or subcontractor . . . has committed a violation of Federal criminal law involving fraud, conflict of interest, bribery, or gratuity violations found in Title 18 U.S.C. or a violation of the civil False Claims Act"; (3) a reporting system for "instances of 'improper conduct,'" "instructions that encourage employees to make such reports," and "provide for disciplinary action" for such conduct "or for failing to take reasonable steps to prevent such conduct"; and, (4) an "internal control system . . .  to ensure timely reporting . . . of specific criminal violations under Title 18 U.S.C., or violation of the False Claims Act."

Taking each provision in turn, no reasonable observer would think that the incident described in the complaint would implicate the clause requiring Valiant to exercise due diligence to "prevent and detect criminal conduct."   Nor would a reasonable observer conclude that the incident qualifies as a "violation of Federal criminal law involving fraud, conflict of interest, bribery or gratuity" or a "violation of the civil False Claims Act."  Although the shove may have been an instance of "unethical" or "improper conduct," or even arguably a criminal violation under Title 18, possibly

implicating the internal control system (Ms. Kappouta could and did report the incident to Embassy security), the complaint does not contain any plausible allegation that it is of the sort triggering the mandatory reporting of specific criminal violations under Title 18 of the U.S. Code or the False Claims Act.  Moreover, the theoretically applicable provisions are either so tenuously related or vague that to accede to their application in this instance would render any complaint of interpersonal disagreement protected under § 4701, a result plainly not intended by the statute.  In essence, Ms. Kappouta asks us to find that because the dispute was between employees of a contractor, it is thereby related to the contract.  We decline to adopt such a broad interpretation.

Our conclusion that the disclosure must demonstrate a tangible connection to the purpose of the contract is reflected in the statutory text and comports with the analysis this and other courts have applied in analogous situations.  Section 4701 describes "mismanagement *of a Department of Defense contract*," waste *of Department funds*," "abuse of authority *relating to a Department contract*," and "violation[s] of law . . . *related to a Department contract*."  10 U.S.C. § 4701(a)(1)(A) (emphasis added).  Congress reminds us of the limits of the statutory scope at each step.  To this end, one district court recognized that descriptions of "persistent sexual harassment," while conceivably pertaining to a violation of law, failed on the grounds that the disclosures were not related to a government contract to provide security services.  *Sargent v. Pompeo*, No. 19-cv-00620, 2020 WL 5505361, at *15 (D.D.C. Sept. 11, 2020).  By contrast, the Fourth Circuit found the DCWPA to be an appropriate avenue for relief when employees raised concerns that a contractor was intentionally submitting bids

with deflated estimated labor costs (that would ultimately result in cost overruns) to win contracts. *United States ex rel. Cody v. Mantech Int'l, Corp.*, 746 F. App'x 166, 181 (4th Cir. 2018). And in *Coons*, this court determined disclosures regarding a possible fraudulent tax refund were protected under the Whistleblower Protection Act given that they concerned the "mission" of the IRS — to collect taxes. 383 F.3d at 890. Though the Whistleblower Protection Act does not contain the same nexus requirement as that of the DCWPA, *see* 5 U.S.C. § 2302(b)(8)(A)(i)–(ii), it contains the same reasonable belief requirement, *see Coons*, 383 F.3d at 890, and in *Coons*, we considered it significant that the disclosure related to the agency's function.

Along these same lines, as Ms. Kappouta candidly admits, the incident at the bar bears no relation to her everyday job duties, that is, to perform linguist services pursuant to Valiant's contract with the Department. *Todd Const., L.P.*, 656 F.3d at 1312 ("[R]elating to the contract" necessarily implies "some relationship to the terms or performance of [that] contract."). Without some relation to the services Ms. Kappouta, and thereby Valiant, was contracted to provide, it is difficult to imagine a relation to the contract itself. Here, the facts as pled concern a personal dispute (outside of working hours, for that matter), and do not sufficiently allege — nor would any reasonable observer believe — that they implicated the DoD-Valiant contract. Although Valiant's actions may be unwise or unjust, the DCWPA is simply not the appropriate avenue for recourse based on what was pled here. Were we to so hold, any dispute that might constitute a violation of the law, regardless of a reasonable belief about the nexus to a contract, would be actionable, a result plainly not contemplated by the Act. *See Sargent*, 2020 WL 5505361,

at *15 ("To expand the reach of [the National Defense Authorization Act] to encompass any" violation of law "occurring within the context of a federal contract would stretch the statute's text beyond its plain meaning.").

Congress has told us that "violation of law" precipitates statutory protection only if the plaintiff reasonably believes the violation is related to a defense contract. 10 U.S.C. § 4701(a)(1)(A). After having declined the opportunity to amend her complaint, Ms. Kappouta fails to allege such a reasonable belief.

AFFIRMED.