NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 6 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LYNWOOD INVESTMENTS CY LIMITED,

Plaintiff-Appellant,

v.

MAXIM KONOVALOV; et al.,

Defendants-Appellees.

Nos. 22-16399
       23-15672

D.C. No. 3:20-cv-03778-MMC

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted December 7, 2023
San Francisco, California

Before: COLLINS, FORREST, and SUNG, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge COLLINS.

Plaintiff Lynwood Investments brings multiple claims against Defendants, in

connection with the development and commercialization of the NGINX software.

The district court dismissed Plaintiff's amended complaint and granted

Defendants' motions for attorneys' fees. This consolidated appeal followed. We

---

    *    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part.[1]

We review the grant of the motion to dismiss de novo. *Kappouta v. Valiant Integrated Servs., LLC*, 60 F.4th 1213, 1216 (9th Cir. 2023).

1. The district court correctly found that California's last overt act doctrine did not extend the statute of limitations on any of Plaintiff's claims. Under California law, civil "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994). "[W]hen a civil conspiracy is properly alleged . . . the statute of limitations does not begin to run on any part of a plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been completed." *Wyatt v. Union Mortg. Co.*, 598 P.2d 45, 53 (Cal. 1979).

Plaintiff's argument that this Court should combine the various claims into

---

[1] On appeal, Plaintiff has declined to pursue Count 12, titled "tortious interference with prospective business advantage against all Defendants." Accordingly, only Counts 1 (breach of contract by Defendant Konovalov), 2 (breach of contract by Defendant Sysoev), 4 (statutory breach by Defendant Konovalov), 7 (aiding and abetting by Defendants Runa Capital and E.Ventures), 8 (aiding and abetting by Defendant F5), 9 (tortious interference by various Defendants), 13 (fraud by various Defendants), and 14 (Copyright Act claim against various Defendants) remain.

an overarching conspiracy with "three fundamental aims," and hold that the last overt act of this conspiracy was "the sale [of the NGINX Enterprise to Defendant] F5" is inconsistent with California law. A civil conspiracy is contingent on an underlying tort. *Litton*, 869 P.2d at 457. Further, the California Supreme Court applies the last overt act doctrine on a claim-by-claim basis. *See People v. Zamora*, 557 P.2d 75, 90 (Cal. 1976) (applying the doctrine in the criminal context).

Plaintiff argues that *Livett v. F. C. Fin. Assocs.*, 177 Cal. Rptr. 411 (Ct. App. 1981), supports its position. We disagree. *Livett* did not combine heterogenous claims with varying statutes of limitations into a single civil conspiracy. Instead, that case concerned a single "Statute of Limitations for fraud," where the plaintiff alleged various overt acts in furtherance of the fraud. *Id.* at 413–14. Plaintiff here alleges fraud as to Count 13, but then tries to cobble together various disparate claims, with different underlying causes of action, into a single civil conspiracy. This approach is not supported by California precedent.

Thus, we apply the last overt act doctrine on a claim-by-claim basis and conclude that it does not extend the statute of limitations for any of Plaintiff's claims:[2]

First, Counts 1 and 2 allege breaches of employment contracts, not tort

---

[2] Count 14 is a breach of Copyright Act claim, not a tort claim. The parties do not dispute it is subject to a different statute of limitations analysis, discussed below.

claims. Plaintiff does not explain how a conspiracy theory of liability for torts can extend the statute of limitations for breach of contract claims. *See Litton*, 869 P.2d at 457 (stating a civil conspiracy "must be activated by the commission of an actual tort").

Second, Count 4 alleges Defendant Konovalov breached certain duties under Articles 53.1 and 53.3 of the Russian Civil Code. These statutory duties arose from Konovalov's "senior management position," which afforded him "extensive discretion" and "decision-making authority." Even assuming such breaches were torts under California law, other defendants cannot have tort liability arising from conspiracy unless they were "legally capable of committing the tort." *Id.* Here, Plaintiff fails to plausibly allege that any other Defendants possessed comparable senior positions or decision-making authority that would create such statutory duties. Thus, the last overt act doctrine cannot extend the statute of limitations for Count 4.

Third, Plaintiff fails to plausibly allege the elements of civil conspiracy as to the fraud claims stated in Counts 7 and 8. A plaintiff must show "formation and operation of the conspiracy." *Rusheen v. Cohen*, 128 P.3d 713, 722 (Cal. 2006). This requires showing "that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan. . . . It is not enough that the [co-conspirators] knew of an intended wrongful act, they

4

must agree—expressly or tacitly—to achieve it." *AREI II Cases*, 157 Cal. Rptr. 3d 368, 382 (Ct. App. 2013) (cleaned up).

Count 7 alleges that in funding the NGINX Enterprise,[3] Defendants Runa and E.Ventures aided and abetted Defendants Konovalov, Sysoev, and Smirnoff in committing fraud, and in breaching their contractual and statutory obligations to Plaintiff's predecessor-in-interest, Rambler. Count 8 makes similar allegations concerning Defendant F5. Plaintiff argues that Defendants' knowledge and agreement as to the formation and operation of the conspiracy can be inferred based on scattershot factual allegations concerning Counts 7 and 8. But for the Court to make such an inference, factual allegations must show not only that conduct is "consistent with" Plaintiff's preferred explanation, but rather "more likely explained by" Plaintiff's theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *see also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (noting that where two explanations are merely possible, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true" (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007))). Here, Plaintiff's factual allegations concerning formation and operation of the

---

[3] The complaint defines the "NGINX Enterprise" to include "the purloined NGINX-related business opportunities and enterprise, proprietary NGINX software (including NGINX Plus), Open Source NGINX, and related intellectual property and goodwill."

5

conspiracy as to Counts 7 and 8 are not plausible. Thus, the last overt act doctrine cannot extend the statute of limitations for either Count.

Fourth, even assuming Plaintiff plausibly alleges the formation and operation of a conspiracy to commit the tort claimed in Count 9, Plaintiff does not adequately allege that any Defendant engaged in an overt act pursuant to that conspiracy at a time that would make Count 9 timely. In Count 9, Plaintiff claims that Defendants Konovalov, Robertson, and the NGINX business entities tortiously interfered with Sysoev's contractual obligations to Rambler. To state a claim for tortious interference with a contract, Plaintiff must allege "actual breach or disruption of the contractual relationship." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990).

Here, it is undisputed that Sysoev's contracts with Rambler "terminate[d] as of December 1, 2011." Plaintiff alleges that Section 12.3 of one of Sysoev's contracts incorporated a post-termination obligation "not to disclose information constituting an official or commercial secret." And Plaintiff alleges in general terms that "continuing through 2019, Konovalov [and others] actively encouraged and persuaded Sysoev to breach his obligations to Rambler by . . . disclosing Rambler's confidential and proprietary information." However, despite running over 150 pages, the complaint fails to allege with any specificity: (1) what information was considered "an official or commercial secret of [Rambler]" under

6

Sysoev's contract or (2) how Konovalov and other Defendants "encouraged and persuaded" Sysoev to disclose that information after Sysoev's departure from Rambler in 2011. Likewise, on appeal, Plaintiff fails to identify a single, specific protected disclosure that occurred after Sysoev's employment terminated. Because conclusory allegations are "not entitled to be assumed true," *Iqbal*, 556 U.S. at 681, Plaintiff has failed to allege facts showing a violation of Section 12.3 occurred after 2011 that could extend the statute of limitations enough to make Count 9 timely.

Finally, Plaintiff fails to allege a last overt act that could extend the statute of limitations on Count 13, which alleges fraud by Konovalov, Sysoev, and Smirnoff.[4] A necessary element of fraud is "a misrepresentation[, which includes] false representation, concealment, or nondisclosure." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004). However, a fraudulent concealment or nondisclosure requires "some fiduciary relationship giving rise to a duty to disclose." *Weiner v. Fleischman*, 816 P.2d 892, 895 (Cal. 1991).

Konovalov, Sysoev, and Smirnoff could not have committed a fraudulent concealment or nondisclosure, as Plaintiff alleges, after they left Rambler in 2011 and 2012 because they no longer owed Ramble a duty to disclose. Plaintiff alleges

---

[4] Although this Count was originally raised against additional Defendants, on appeal Plaintiff pursues this claim only with respect to these three Defendants.

that these Defendants did owe continuing "statutory duties under Article [sic] 53.1 and 53.3 [of the Russian Civil Code] to act honestly and fairly with Rambler." For the reasons stated above, however, Plaintiff fails to sufficiently allege that Sysoev and Smirnoff occupied positions giving rise to such statutory obligations. *See supra* at 4.

And Plaintiff failed to establish that Konovalov's duties under Articles 53.1 and 53.3 survived his employment with Rambler. Pursuant to Federal Rule of Civil Procedure 44.1, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony." "[A] party relying on foreign law has an obligation to raise the specific legal issues and to provide the district court with the information needed to determine the meaning of the foreign law." *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018). At the motion to dismiss stage, courts may rule on a question of foreign law by considering "[i]ndependent research, plus the testimony of foreign legal experts, together with extracts of foreign legal materials." *de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016).

Here, Plaintiff relies on its expert, Alexander Christophoroff, who opined that Konovalov's duties towards Rambler "did not expire at the conclusion of [his] employment with Rambler." The two Russian cases that Christophoroff relies on for support did not involve an alleged breach that occurred after the termination of employment. Further, the plain text of Articles 53.1 and 53.3 does not state that a

8

violation of these provisions can occur post-employment. Because Plaintiff points to no other Russian authority supporting its contention, it cannot show that Konovalov committed an overt act at a time that could adequately extend the statute of limitations for Count 13.

2. The district court also correctly found that the discovery rule does not extend the statute of limitations on any of Plaintiff's claims. A statute of limitations is tolled until "the plaintiff discovers, or has reason to discover, the cause of action." *Pooshs v. Philip Morris USA, Inc.*, 250 P.3d 181, 187 (Cal. 2011) (cleaned up). To rely on the discovery rule, a plaintiff "must specifically plead facts to show . . . the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920–21 (Cal. 2005) (cleaned up). Where a plaintiff receives enough information to suspect wrongdoing prior to filing suit, the plaintiff is "required to conduct a reasonable investigation" and is imputed with knowledge that would have been revealed by the investigation. *Id.* at 920. Here, by 2014 at the latest, Plaintiff had "reason to suspect an injury and some wrongful cause." *Id.* at 917. Plaintiff knew that: (1) Defendants were pursuing a lucrative business opportunity based on the NGINX software; (2) building premium features onto software such as Open Source NGINX was a profitable business model; (3) Sysoev was a gifted programmer with in-depth knowledge of Open Source NGINX; (4) Sysoev had designed Open Source

NGINX while working for Rambler and had publicly released the software without Rambler's consent; and (5) up until 2011, Sysoev had been the only person to edit Open Source NGINX.

Plaintiff's suggestion that it needed to be aware of *all* the elements of its specific claims to trigger the discovery rule fails because under California law, the statute of limitations begins to run once a plaintiff is on inquiry notice, not when a plaintiff's claim is perfected. *Jolly v. Eli Lilly and Co.*, 751 P.2d 923, 928 (Cal. 1988) ("A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. . . . So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her."); *see also Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999) (a plaintiff "discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof"). Indeed, the fact that Rambler conducted two separate investigations by the end of 2014 supports the conclusion that Plaintiff was on notice of potential wrongdoing by this point.

Plaintiff likewise fails to demonstrate that a reasonable investigation would not have revealed its causes of action. Because Plaintiff was on notice, California law imputes to Plaintiff "knowledge of the information that would have been revealed by [a reasonable] investigation," *Fox*, 110 P.3d at 920, including

10

"information that could have been gained by examining public records,"
*NBCUniversal Media, LLC v. Superior Ct.*, 171 Cal. Rptr. 3d 1, 12 (Ct. App. 2014)
(citing *Miller v. Bechtel Corp.*, 663 P.2d 177, 181–82 (Cal. 1983)). Therefore, by
2014 Plaintiff would have also known that: (1) there was an nginxplus.com
website; (2) according to that website, someone had developed over 12,000 active
applications of "nginx+" that were already deployed and running on the "Nginx
Hosted Platform" as of March 2011 (when Defendants Sysoev and Konovalov
were still employed by Rambler); (3) the NGINX trademark had been first used in
February 2010, and first used in commerce in March 2011 (again, when
Defendants Sysoev and Konovalov were still employed by Rambler); and (4)
Alexander Korotkov, the 2019 whistleblower, was seeking to trademark NGINX.

Plaintiff argues that key facts—including Rambler's ownership of certain
NGINX elements—were unavailable until a whistleblower came forward years
later. But Plaintiff's own filings show that Rambler was on notice of its ownership
claim long before the whistleblower approached the company. For example,
Plaintiff argues that Defendant F5's representations as to the date of first use of the
NGINX trademark "demonstrate that [Defendant F5] knew that NGINX Plus was
developed by the conspirators while employed at Rambler and in furtherance of the
scope of their employment responsibilities." Plaintiff's filing emphasizes that these
trademark dates "closely align with the date of first use (February 1, 2010) and the

11

date of first use in commerce (March 1, 2011) cited by Korotkov on his own trademark application on behalf of the conspirators." If these dates, which broadly track information that was publicly available as early as 2011, demonstrate that Defendant F5 had knowledge of the Defendant Employees' development of NGINX Plus while still employed at Rambler, then they also show that Rambler had or should have had that same knowledge. While the whistleblower later supplied additional details as to *how* the Defendant Employees covertly developed NGINX Plus while employed at Rambler, the company was on notice years earlier of the key fact that NGINX Plus was "developed by the conspirators while employed at Rambler and in furtherance of the scope of their employment responsibilities."

The discovery rule tolls the statute of limitations until the plaintiff is on inquiry notice, not until he has gathered all the facts needed to pursue a claim. *Bergstein v. Stroock & Stroock & Lavan LLP*, 187 Cal. Rptr. 3d 36, 57 (Ct. App. 2015) (rejecting plaintiff's claim that "the discovery rule must prevent the statute of limitations from running until [they] had sufficient evidence to support their prima facie case" as "unsupported by any pertinent legal authority."); *see also Grisham v. Philip Morris U.S.A., Inc.*, 151 P.3d 1151, 1156 (Cal. 2007) ("[S]uspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of

limitations period." (cleaned up)); *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (holding, in the context of civil RICO cases, that "in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock."). Accordingly, the discovery rule does not toll the limitations period on Plaintiff's claims.

3. We reverse in part the district court's dismissal of Plaintiff's copyright infringement claim in Count 14. Plaintiff alleges it has a copyright interest in "Pre-2012 NGINX Software," which it defines as "NGINX Plus and Open Source NGINX, in both source code and executable form, conceived and/or developed before the end of 2011, when Sysoev left the employ of Rambler." In effect, Plaintiff asserts a copyright interest in three categories of software: (1) Open Source NGINX, (2) NGINX Plus "conceived" at Rambler, and (3) NGINX Plus "developed" at Rambler. We hold that Plaintiff states a viable claim with respect to the third category but not the first and second categories. *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1357 (Fed. Cir. 2014) (explaining that a court must "ferret out" protectable work from unprotectable work in assessing copyrightability under Ninth Circuit law).

Plaintiff does not plausibly assert a copyright infringement claim in Open Source NGINX because the complaint fails to allege that NGINX Plus exceeds the scope of the Open Source NGINX license. The complaint describes this license as

a "FreeBSD version of the so-called 2 paragraph Berkeley Software Distribution (BSD) open source license." "To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution)." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 940 (9th Cir. 2010). Here, Plaintiff fails to identify any terms in the Open Source NGINX license that Defendants violated by developing NGINX Plus. Plaintiff vaguely asserts that Rambler did not give Sysoev license to use Open Source NGINX for his own commercial ventures, but Plaintiff does not identify any license term that prohibits commercial use.

In addition, Plaintiff fails to state a claim regarding NGINX Plus "conceived" at Rambler, as ideas cannot be copyrighted. *Daniels v. Walt Disney Co.*, 958 F.3d 767, 772 (9th Cir. 2020) (citing 17 U.S.C. § 102(b)). To receive copyright protection, an idea must be "fixed in a tangible medium." *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011); 17 U.S.C. § 102(a). To the extent Plaintiff's claim rests on software merely "conceived" by Sysoev but not fixed in a tangible medium, the claim fails.

However, Plaintiff states a viable claim regarding NGINX Plus "developed" at Rambler. "A valid claim for copyright infringement requires '(1) ownership of a

14

valid copyright, and (2) copying of constituent elements of the work that are original.'" *Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Plaintiff asserts ownership of the NGINX Plus code "developed" at Rambler under Russian law and contends that Defendants infringed on that copyright under U.S. law by using the code in their commercialization efforts. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1079 (9th Cir. 2022) (under the Berne Convention, foreign law governs the issue of ownership, while U.S. law governs whether infringement occurs), *cert. denied*, 143 S. Ct. 2583 (2023). We construe the allegation that Sysoev "developed" the NGINX Plus software as an allegation that the software was fixed in a tangible medium. *See Nacarino v. Kashi Co.*, 77 F.4th 1201, 1203 (9th Cir. 2023) (on a motion to dismiss, we "construe a complaint's allegations in favor of the plaintiff").

Defendants do not meaningfully dispute that Plaintiff has a viable claim over NGINX Plus developed at Rambler. But they alternatively argue that the copyright claim is untimely. We disagree. Because the crux of Plaintiff's copyright claim is ownership, the three-year statute of limitations did not begin to run until Defendants communicated to Rambler "plain and express repudiation" of Rambler's ownership. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (cleaned up). We agree with the district court

15

that the communications relied on by Defendants do not meet that requirement, so Plaintiff's claim is timely.

Defendants also argue that we should affirm dismissal of Plaintiff's copyright claim on the ground that Plaintiff's complaint fails to plausibly allege that NGINX Plus software was developed at Rambler and fails to adequately identify such software. In our view, however, Plaintiff sufficiently alleges that the Defendant Employees "had already developed substantial portions of NGINX Plus while still employed at Rambler and using Rambler resources and infrastructure." And, the complaint adequately identifies the software at this stage of litigation by providing a roadmap for identifying the protected code; specifically, Plaintiff alleges that commit dates can be used to determine the portions of the NGINX Plus code finalized before Sysoev left Rambler.

Finally, Plaintiff's copyright claim does not use impermissible group pleading. Plaintiff's complaint alleges that this claim is brought against Defendants Konovalov, Sysoev, Alexeev, Dounin, Smirnoff, NGINX BVI, NGINX Software, Inc., NGINX DE, Robertson, and F5. The complaint adequately describes the role of each of these Defendants in copying and distributing the NGINX Plus code at issue here.

4. Because we reverse in part the district court's dismissal of Plaintiff's copyright infringement claim, we also vacate the fee award to Defendants under 17

U.S.C. § 505. *See Graham-Sult v. Clainos*, 756 F.3d 724, 750, 753 (9th Cir. 2014).

The parties shall bear their own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

*Lynwood Invs. CY Ltd. v. Konovalov*, No. 22-16399+

COLLINS, Circuit Judge, concurring in part, concurring in the judgment in part, and dissenting in part:

I agree with the court that a limited portion of the copyright infringement claim asserted by Plaintiff-Appellant Lynwood Investments CY Ltd. was sufficiently pleaded to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and I therefore concur in Section 3 of the court's memorandum. Because that partial reversal of the copyright claim vitiates the district court's award of attorney's fees, I also concur in Section 4 of the court's memorandum. In my view, however, at least some of the remaining claims asserted by Plaintiff were also adequately pleaded, and I therefore would reverse in part and affirm in part the district court's dismissal of the remainder of Plaintiff's complaint. Because, as to these remaining claims, my reasoning and conclusions do not align with the majority's memorandum, I respectfully concur in the judgment in part and dissent in part.

**I**

Under the allegations of the operative complaint, a subset of Plaintiff's claims are timely under California law, but only to the extent that they rely on the theory that Defendant Igor Sysoev developed some of the code for NGINX Plus and Enterprise while he was at Rambler and did so using Rambler time, resources, and infrastructure.

## A

The complaint adequately alleges that Sysoev secretly developed at least some NGINX Plus code during his time at Rambler and that he did so using Rambler's resources. Plaintiff further alleges that Sysoev and his relevant co-Defendants took that code and used it to launch their own start up in the United States, which they eventually sold to the American venture capital firms named as Defendants.

Moreover, the complaint adequately alleges that this particular misconduct was not discovered, and could not reasonably have been discovered, until Alexander Korotkov blew the whistle in April 2019. Under the allegations of the complaint, the Rambler-related Defendants hid their tracks to such a degree that a reasonable and diligent investigation would not have uncovered *that they had developed NGINX Plus code at Rambler*. These Defendants deleted the content of the seven servers they used to develop NGINX Plus, and they then deleted those servers from Rambler's inventory of thousands of servers. These Defendants also developed NGINX Plus code within the Network Operations Center ("NOC") department, which was a separate department within Rambler that was "ring-fenced" from the rest of the company, meaning that it had its own internal email communications and servers. Within this department, these Defendants used the "Yam server" to send emails to one another and to develop NGINX Plus code. The

2

Yam server was disconnected from Rambler's email system, and the complaint alleges that its existence was only known to the Rambler-related Defendants. In connection with their departures from Rambler, these Defendants arranged for the deletion of the contents of the Yam server and its removal from Rambler's inventory logs.

As described in the complaint, Plaintiff only learned of the Yam server from Korotkov, who specifically "informed Rambler and Lynwood of the importance of the NOC department and its ring-fenced servers for hosting relevant information regarding the NGINX Enterprise." Once Korotkov identified it, Plaintiff located the disconnected Yam server (which had been slated for demolition), hired a digital forensics firm to recover the deleted data, and only then learned of Defendants' work on NGINX Plus while at Rambler. As described in the complaint, Korotkov was essential to the discovery of the Yam server and its contents, which described Sysoev's work on NGINX Plus while employed at Rambler. Plaintiff plausibly pleads that no one knew of the Yam server's existence except for Defendants, as it had been removed from Rambler's inventory, but even if Plaintiff had somehow found the Yam server, it would have found an empty server with no data.

I think these allegations must be distinguished from the complaint's distinct theory that Rambler owned the *open-source code* for NGINX and that use of that open-source code was actionable under various non-copyright causes of action. As

3

to that latter theory, I agree with the majority that Rambler had inquiry notice long ago that the open-source code was being commercialized and that Defendants were involved in such commercialization. *See* Memo. Dispo. at 10. Any otherwise time-barred claims based on the alleged misconduct of using the open-source code are therefore *not* saved by the discovery rule. *See Jolly v. Eli Lilly & Co.,* 751 P.2d 923, 928 (Cal. 1988). And to the extent that the complaint attempts to allege a conspiracy with respect to the use of open-source code, I do not see how the Rambler-related Defendants could have had any continuing obligations vis-à-vis Rambler with respect to the use of *open-source code after* they left Rambler. They may have had special obligations concerning even the use of open-source code while at Rambler, but once they left, they had the same (limited) right to use the open-source code as any of the hundreds of millions of users worldwide who used the open-source code. Any viable theory of conspiracy concerning open-source code, therefore, would have to be tied to conduct while at Rambler, and that means that the relevant overt acts supporting that conspiracy were all completed long ago.

But the fact that Plaintiff's non-copyright claims based on open-source code might be time-barred does *not* mean that Plaintiff's claims based on the separate (and not discoverable) misconduct of secretly developing NGINX Plus code while at Rambler are also time-barred. Under *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914 (Cal. 2005), "if a plaintiff's reasonable and diligent investigation

4

discloses" or would have disclosed, "only one kind of wrongdoing when the injury was actually caused by tortious conduct of a wholly different sort, the discovery rule postpones accrual of the statute of limitations on the newly discovered claim." *Id*. at 924. This is especially true here, given that the Rambler-related Defendants' fraudulent concealment of their development of NGINX Plus using Rambler resources while at Rambler precluded Plaintiff from discovering that distinctive category of wrongful conduct. *Cf. Snow v. A. H. Robins Co.*, 211 Cal. Rptr. 271, 279 (Cal. Ct. App. 1985) ("It is painfully obvious to us plaintiff could not bring an action for fraudulent concealment of information until she learned of the possibility of any fraudulent concealment.").

**B**

Against this backdrop, the next question is which of the claims that the district court dismissed as untimely should instead be held to survive. In my view, to the extent that they are based on the secret development of NGINX Plus code at Rambler, Plaintiff's claims for breach of contract against Defendant Maxim Konovalov (count 1), breach of contract against Sysoev (count 2), and breach of Russian Civil Code obligations as to Konovalov (count 4) all survive. They are timely because, under the discovery rule and the doctrine of fraudulent concealment, the statute of limitations did not begin to run until Korotkov informed Rambler of Defendants' deception in April 2019. I also see no basis for

5

dismissing these three claims on substantive grounds in this posture, and the district court did not dismiss them on any grounds other than untimeliness.

For similar reasons, I would hold that the fraud claim (count 13) survives as to Konovalov, Sysoev, and Smirnoff to the extent it is based on fraudulent activities related to the secret development of NGINX Plus code at Rambler and the subsequent concealment of that activity.[1] Although these claims sound in fraud, and are thus subject to the heightened-pleading requirement of Federal Rule of Civil Procedure 9(b), *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003), the complaint's detailed description of Konovalov, Sysoev, and Smirnoff's clandestine development of NGINX Plus code using Rambler resources meets that rule's standards. The district court dismissed the fraud claim against these three Defendants solely based on timeliness, but that was erroneous for the same reasons that dismissal of Counts 1, 2, and 4 was erroneous.

## II

I would affirm on the merits the dismissal of the aiding and abetting claim against Runa Capital, Inc. ("Runa") and E. Venture Capital Partners II, LLC ("E. Ventures") (count 7); the aiding and abetting claim against F5, Inc. ("F5") (count 8); and the tortious inference claim against Konovalov, Robertson, and the

---

[1] As I read it, Plaintiff's opening brief does not contest the district court's dismissal of the fraud claim as to NGINX Software, Inc.; NGINX, Inc. (BVI); and NGINX, Inc. (collectively, the "NGINX Defendants").

6

NGINX Defendants (count 9).

The aiding and abetting claims rest on the theory that the relevant Defendants assisted an intentional tort. Because the relevant intentional torts sound in fraud, Rule 9(b) applies. *Vess*, 317 F.3d at 1103. The complaint, however, fails to allege facts with the requisite specificity establishing that Runa, E. Venture, and F5 had actual knowledge of the actionable fraudulent conduct of Konovalov, Sysoev, and Smirnoff. That Runa hired Dmitri Galperin, an alleged coconspirator who had worked at Rambler, is insufficient, because the allegations as to what Galperin knew and what he told Runa are too conclusory to satisfy Rule 9(b). *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) ("[M]ere conclusory allegations of fraud are insufficient." (citation omitted)). And the allegation that F5 "reviewed and analyzed Open Source NGINX and NGINX Plus" code is not sufficient to establish F5's "actual knowledge" of the relevant fraudulent conduct and a purpose to assist it. *Fox Paine & Co., LLC v. Twin City Fire Ins. Co.*, 325 Cal. Rptr. 3d 173, 194–95 (Ct. App. 2024).

Plaintiff's claim of tortious interference with contract—asserting that Kovalov, Robertson, and the NGINX Defendants knowingly induced Sysoev to breach his contractual duties to Rambler—rests primarily on activities that occurred while the disloyal employees were breaching their employment contracts at Rambler. This claim is governed by Russian law under California choice-of-law

7

principles. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 935–36 (9th Cir. 2000). However, Plaintiff has failed to show, through its expert's testimony or otherwise, that Russian law recognizes a claim for tortious interference with contract. *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018) (holding that the party relying on foreign law has the obligation to present foreign legal materials to the court).

*   *   *

For the foregoing reasons, I would reverse the district court's judgment to the extent that (1) it dismissed Plaintiff's claims for breach of contract against Konovalov (count 1), breach of contract against Sysoev (count 2), and breach of Russian Civil Code obligations as to Konovalov (count 4), but only to the extent that those claims are based on the secret development of NGINX Plus code at Rambler; (2) it dismissed the fraud claim (count 13) as to Konovalov, Sysoev, and Smirnoff, but subject to the same proviso; (3) it dismissed the copyright claim (count 14), except to the extent that the claim rests on open source code or code merely "conceived" while Sysoev was at Rambler; and (4) it awarded attorney's fees. In all other respects, I would affirm the judgment. To the extent that the majority holds otherwise, I respectfully dissent in part.